**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Hot-Shot Motorworks, et al., | : | Case No. 3:13 CV 1322 |
|     Plaintiff, | : | |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | **AND ORDER** |
| Falicon Crankshaft Components and | : | |
| Creative Design and Engineering, LLC, | : | |
|     Defendants. | : | |

## I. Introduction

This matter is before the Court on a Motion to Dismiss filed by Defendants Falicon

Crankshaft Components, Inc., and Creative Design and Engineering, LLC, on November 5, 2013

(Docket No. 22). Plaintiffs Hot-Shot Motorworks and Daniel E. Thompson filed their Opposition

on December 11, 2013 (Docket No. 28). Defendants submitted a Reply on December 23, 2013

(Docket No. 29). For the reasons that follow, the Motion to Dismiss is granted as to Plaintiffs'

Counts I and II. The remaining state law claims are dismissed for lack of subject matter

jurisdiction.

1

## II. Parties

Plaintiff Hot-Shot Motorworks ("Plaintiff Hot-Shot") is a sole proprietorship owned and operated by Plaintiff Daniel Thompson ("Plaintiff Thompson") with its principal place of business in Upper Sandusky, Ohio.

Defendant Falicon Crankshaft Components, Inc. ("Defendant Falicon") is a corporation with its principal place of business in Clearwater, Florida.

Defendant Creative Design and Engineering, LLC ("Defendant CDE") is a limited liability company with its principal place of business in Clearwater, Florida. Defendant CDE has two members of record, Glenn L. Salpaka ("Mr. Salpaka") and Anne T. Salpaka ("Ms. Salpaka"), both of whom reside in Palm Harbor, Florida.

For ease of discussion, Plaintiff Hot-Shot and Plaintiff Thompson will collectively be referred to as "Plaintiffs." Defendant Falicon and Defendant CDE will collectively be referred to as "Defendants."

## III. Factual Background

Formed and founded by Plaintiff Thompson in 1974, Plaintiff Hot-Shot designs, tests, and manufactures engines and various related components for multiple clients, including those in the automotive, motorcycle, and aerospace industries (Docket No. 15, ¶¶ 8, 9). Plaintiffs allege that the unique nature of their services, including their designs, production processes, testing procedures, and marketing and business information, has allowed them to capture a specialty niche in these industries, one that has very few national competitors (Docket No. 15, ¶¶ 10, 12).

Some time in 2007, Plaintiffs were approached by UAV Solutions, Inc., ("UAV Solutions") with an offer of contract to design and manufacture new engines and related

components for unmanned aerial vehicles ("UAVs") (Docket No. 15, ¶ 13). Plaintiffs declined

the offer (Docket No. 15, ¶ 13). In the fall of 2007, Plaintiffs were contacted by Defendant

Falicon, who was attempting to secure the same contract with UAV Solutions (Docket No. 15, ¶

13). According to Plaintiffs, Defendant Falicon lacked the expertise to fulfill the contract on its

own (Docket No. 15, ¶ 15). Rather, Defendant Falicon sought an arrangement with Plaintiffs

whereby Plaintiffs would complete the design, manufacture, and testing of the UAV engines and

related components which would then be combined with parts and components manufactured by

Defendant Falicon (Docket No. 15, ¶ 16). Defendant Falicon would subsequently sell the

completed product to UAV Solutions (Docket No. 15, ¶ 16). According to Plaintiffs, Defendant

Falicon agreed to compensate Plaintiffs at the rate of $79 per hour for labor and consulting and

$150 per hour for engine testing services, as well as for the cost of materials, travel expenses,

and other incidental expenses (Docket No. 15, ¶ 17). Plaintiffs agreed and entered into an oral

agreement ("the Agreement") with Defendant Falicon in late 2007 (Docket No. 15, ¶ 16).

    Plaintiffs worked on the UAV engines from December 2007 through March 2010

(Docket No. 15, ¶ 20). In order to complete the work, Plaintiffs allege that they were required to

provide Defendant Falicon with proprietary trade secret information that included the research,

design, redesign, machining, modification, testing, and assembly of a variety of UAV engine

components (Docket No. 15, ¶ 20). This exchange of information occurred through a variety of

means, including in-person travel, shipping of parts, phone calls, electronic mail, and facsimile

transmissions (Docket No. 15, ¶ 21). Plaintiffs ultimately assembled and tested twelve engines

and other additional components, seven of which were delivered directly to UAV Solutions,

three of which were delivered to Defendant Falicon, and two of which are still stored in

3

Plaintiffs' workshop (Docket No. 15, ¶ 20).

According to Plaintiffs, after delivery of the engines, Defendant Falicon refused to pay Plaintiffs for their services or materials, in violation of the Agreement (Docket No. 15, ¶ 24). Plaintiffs thereafter ceased all work for Defendant Falicon on March 16, 2010 (Docket No. 15, ¶ 25). Plaintiffs additionally allege that Defendant Falicon has begun marketing Plaintiffs' completed engines and related components as original Defendant Falicon products while also using Plaintiffs' trade secrets and intellectual property to build new engines (Docket No. 15, ¶ 27). It is Plaintiffs' belief that Defendant Falicon also shared and sold these trade secrets and intellectual property to Defendant CDE and UAV Solutions, among others, under the guise of original ownership (Docket No. 15, ¶¶ 27, 30). Furthermore, Plaintiffs allege that Defendant Falicon continues to use the trade secrets and intellectual property to solicit customers away from Plaintiffs (Docket No. 15, ¶ 28).

It is now Plaintiffs' contention that Defendant Falicon entered into the Agreement with the sole purpose of intentionally misleading and deceiving Plaintiffs into relinquishing their trade secrets and intellectual property (Docket No. 15, ¶ 18). As a result, both Defendant Falicon and Defendant CDE were able to gain valuable market, product, and technological information which has substantially increased their participation in the automotive and aerospace engine markets, to the detriment of Plaintiffs (Docket No. 15, ¶ 35).

## IV. Procedural Background

On October 10, 2013, Plaintiffs filed an Amended Complaint against both Defendant Falicon and Defendant CDE in the Northern District of Ohio, Western Division (Docket No. 15). Plaintiffs allege multiple causes of federal and state action, including: (1) violations of the

Racketeer and Corrupt Organizations Act ("RICO") based on fraud and interstate transport; (2) conspiracy to violate RICO based on fraud and interstate transport; (3) violations of R.C. § 2923.32(A)(1); (4) misappropriation in violation of the Ohio Uniform Trade Secrets Act; (5) conversion; (6) conspiracy; (7) unfair competition; (8) unjust enrichment; and (9) failure to compensate (Docket No. 15, ¶¶ 41-87). On November 5, 2013, Defendants filed a Motion to Dismiss, arguing: (1) Plaintiffs failed to sufficiently plead the underlying circumstances of fraud with respect to the RICO claims; (2) all counts under Ohio state law are pre-empted by R.C. § 1333.67; and (3) the entire Amended Complaint should be dismissed as a "shotgun" pleading (Docket No. 22). Plaintiffs filed their Opposition on December 11, 2013 (Docket No. 28). Defendants filed a Reply on December 23, 2013 (Docket No. 29).

### V. Standard of Review

Defendants bring the present Motion to Dismiss under FED. R. CIV. P. 12(b)(6), maintaining that the Amended Complaint fails to state a cause of action. Under general pleading guidelines, found in FED. R. CIV. P. 8, a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). When reviewing a complaint in the context of a motion to dismiss under Rule 12(b)(6), a court must construe the complaint in the light most favorable to the plaintiff, accept as true the plaintiff's factual allegations, and determine whether the complaint "contain[s] sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted); *see also Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012). Such factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, the

5

complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Ultimately, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679.

Because Plaintiffs' RICO claims require proof of mail and wire fraud, Plaintiffs must also meet the more rigorous pleading standards of FED. R. CIV. P. 9(b) with regard to Counts I and II. Under this Rule, "a party *must state with particularity* the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b) (emphasis added). To fulfill this requirement, a plaintiff must, *at a minimum*, "allege the time, place, and content of the alleged misrepresentation on which [they] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Heinrich*, 668 F.3d at 403 (*citing United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003) (*quoting Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993)).

## VI. Discussion

### A.    Federal RICO Claims

By way of general introduction, Plaintiffs allege racketeering activity in direct violation of 18 U.S.C. §§ 1962(b) and (c), as well as a conspiracy to commit racketeering activity, in violation of 18 U.S.C. § 1962(d) (Docket No. 15). Under § 1962(b), Plaintiffs must plead facts tending to establish that Defendants "(1) acquired or maintained (2) through a pattern of racketeering activity or the collection of an unlawful debt (3) an interest in or control of an enterprise (4) engaged in, or the activities of which affect, interstate or foreign commerce." *Huff v. FirstEnergy Corp.*, 2013 U.S. Dist. LEXIS 133574, *33 (N.D. Ohio 2013) (*quoting Advocacy Org. For Patients & Providers Auto Club Ins. Ass'n*, 176 F.3d 315, 321-22 (6th Cir. 1999)). To

6

state a claim under § 1962(c), Plaintiffs must plead the following four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Heinrich*, 668 F.3d at 404 (*citing Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).

In their Motion to Dismiss, Defendants seem to take issue only with Plaintiffs' alleged failure to properly plead the necessary "racketeering activity" (Docket No. 22). In essence, Defendants allege that Plaintiffs fail to plead the elements required of an allegation based on fraud according to the heightened pleading standard set forth in FED. R. CIV. P. 9(b) (Docket No. 22). Plaintiffs disagree, arguing that their allegations need only satisfy the basic pleading requirements of FED. R. CIV. P. 8. Plaintiffs are incorrect.

### 1. Racketeering Activity

For purposes of 18 U.S.C. § 1962, "racketeering activity" consists of numerous acts which are indictable under a variety of federal statutes listed in 18 U.S.C. § 1961(1). Here, Plaintiffs allege three predicate acts of racketeering activity: (1) mail fraud, in violation of 18 U.S.C. § 1341; (2) wire fraud, in violation of 18 U.S.C. § 1343; and (3) travel in interstate commerce in aid of racketeering, in violation of 18 U.S.C. § 1952 (Docket No. 15, ¶ 46). At the outset, it should be noted that the elements of mail fraud and wire fraud are essentially the same, the only difference being the method used. *See Heinrich*, 668 F.3d at 404 (*quoting United States v. Daniel*, 329 F.3d 480, 486 n.1 (6th Cir. 2003)). As such, these two predicate acts will be discussed together.

### a. Mail and Wire Fraud

Both mail and wire fraud consist of "(1) a scheme to defraud, and (2) use of the mails [or wires] in furtherance of the scheme." *Heinrich*, 668 F.3d at 404 (*quoting United States v.*

*Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005)). "A scheme to defraud includes any plan or course of action by which someone uses false, deceptive, or fraudulent pretenses, representations, or promises to deprive someone else of money." *Id*. A plaintiff must also demonstrate *scienter* to establish a scheme to defraud, which is satisfied "by showing the defendant acted either with a specific intent to defraud or with recklessness with respect to potentially misleading information." *Heinrich*, 668 F.3d at 404 (*citing United States v. DeSantis*, 134 F.3d 760, 764 (6th Cir. 1998)).

When pleading either mail or wire fraud, a plaintiff must satisfy the heightened pleading requirements of FED. R. CIV. P. 9(b). To do so, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Heinrich*, 668 F.3d at 404 (*quoting Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (*quoting Gupta v. Terra Nitrogen Corp.*, 10 F.Supp.2d 879, 883 (N.D. Ohio 1998)). A plaintiff is not required to plead or prove first-party reliance on an allegedly false statement. *Heinrich*, 668 F.3d at 404 (*citing Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 648 (2008)). However, a plaintiff must show that the predicate act was both a "but-for" cause *and* a proximate cause of his injuries. *Heinrich*, 668 F.3d at 405 (*citing Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)). There must be "some direct relation between the injury asserted and the injurious conduct alleged." *Id*.

Here, as Defendants note, Plaintiffs fail to include *any* required detail in their Amended Complaint with respect to the alleged fraud, stating only that:

(1)  Defendants knowingly made false statements in an attempt to intentionally mislead and deceive Plaintiffs into performing under the Agreement without

8

compensation and disclosing trade secrets

(2)    Defendants participated in interstate travel as well as employed the use of the mail and wires to further support these false statements

(Docket No. 15, ¶¶ 18, 21). No where in their Amended Complaint do Plaintiffs specify: (1) *what* false statements were made; (2) *who* made the allegedly false statements; (3) *where* the allegedly false statements were made; (4) *when*, other than sometime between June 2007 and the filing of the Complaint, the allegedly false statements were made; or (5) *why* whatever statements were made were allegedly false (Docket No. 15).

Furthermore, Plaintiffs fail to include in their Amended Complaint an adequate basis for inferring *scienter* (Docket No. 15). "The courts have uniformly held inadequate a complaint's general averment of the defendant's knowledge of material falsity, unless the complaint also sets forth specific facts that make it reasonable to believe the defendant knew that a statement was materially false or misleading." *Heinrich*, 668 F.3d at 406. Here, Plaintiffs have alleged only in a general and conclusory fashion that Defendants knew that they were entering into the Agreement with the intent to defraud (Docket No. 15, ¶ 18). Plaintiffs have failed to allege any specific facts that would allow the Court to infer that Defendant Falicon *knowingly* entered into the agreement with the intent to defraud. Plaintiffs' general allegations raise only the "mere possibility of misconduct" and do not show an entitlement to relief. *Iqbal*, 556 U.S. at 679. As such, the Court finds that Plaintiffs have failed to establish the predicate acts of mail or wire fraud.

## b.    Interstate Travel in Aid of Racketeering

In addition to mail and wire fraud, Plaintiffs also allege that Defendants engaged in interstate travel in aid of racketeering, a violation of 18 U.S.C. § 1952 (Docket No. 15, ¶¶ 43, 47). Specifically, Plaintiffs allege that

9

> Defendants aided and abetted by each other, having devised or intending to devise a scheme or artifice to defraud Plaintiffs of their confidential, proprietary and trade secret information by means of false pretenses, representations or promises, *traveled in interstate commerce* in execution of a scheme or artifice to defraud in violation 18 U.S.C. § 1952

(Docket No. 15, ¶ 46) (emphasis added).  While this particular claim is not subject to the heightened pleading standard of FED. R. CIV. P. 9(b), Plaintiffs still must abide by the general pleading guidelines found under FED. R. CIV. P. 8(a)(2), which require Plaintiffs to "state a claim of relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 570). Plaintiffs fail to make such a pleading.

More commonly known as the Travel Act, 18 U.S.C. § 1952 "forbids interstate travel or commerce for the purpose of committing violence or facilitating or promoting unlawful activity." *AK Steel Corp. v. USW*, 2002 U.S. Dist. LEXIS 19676, *20 (S.D. Ohio 2002) (*citing* 18 U.S.C. § 1952). The statute defines "unlawful activity" as any of the following:

(1)     any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics, controlled substances, or prostitution offenses

(2)     extortion, bribery, or arson

(4)     any act which is indictable under subchapter II of chapter 53 of title 31 of the United States Code[1]; or

(3)     any act which is indictable under 18 U.S.C. §§ 1956 or 1957[2]

18 U.S.C. § 1952(b).

---

[1] The purpose of 31 U.S.C. § 5311 et seq. is "to require certain reports or records where they have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings, or in the conduct of intelligence or counterintelligence activities, including analysis, to protect against international terrorism."

[2] 18 U.S.C. § 1956 deals with the laundering of monetary instruments. 18 U.S.C. § 1957 deals with engaging in monetary transactions in property derived from specified unlawful activity.

10

A thorough review of Plaintiffs' Amended Complaint reveals that Plaintiffs fail to allege *any* of these specified unlawful acts (Docket No. 15). Rather, Plaintiffs' allegations concerning interstate travel seem to focus on the alleged underlying fraud:

> (¶ 21)   From December 2007 to March[] 2010 . . . Defendants traveled on numerous occasions from Florida to Ohio and Maryland, and induced Plaintiff to conduct such interstate travel, all for the purpose of fraudulently inducing Plaintiffs into revealing [its] trade secrets to Defendants so that Defendants might unlawfully acquire such trade secrets

> (¶ 32)   Defendants have knowingly received and possessed Plaintiffs' trade secrets, intellectual property and other confidential information that has been and continues to be transferred over state lines, through mail, electronic mail and other means

> (¶ 44)   Composite Exhibit A details Defendants' use of interstate common carriers through which they delivered components to Plaintiffs in order to fraudulently induce Plaintiffs into modifying, redesigning, assembling, testing, calibrating, tuning, and otherwise utilizing and revealing their trade secrets to combine the components into working engines and/or engine parts

> (¶ 46)   Defendants aided and abetted by each other, having devised or intending to devise a scheme or artifice to defraud Plaintiffs of their confidential, proprietary and trade secret information by means of false pretenses, representations or promises, traveled in interstate commerce in execution of a scheme or artifice to defraud in violation of 18 U.S.C. § 1952

(Docket No. 15, ¶¶ 21, 32, 44, 46). No where in their Amended Complaint, either within or outside of their RICO allegations, do Plaintiffs allege any unlawful activity as that term is defined for purposes of § 1952 (Docket No. 15). The Amended Complaint contains only allegations of fraud, misappropriation of trade secrets, conversion, unfair competition, unjust enrichment, and failure to compensate (Docket No. 15). Without the required unlawful activity, Plaintiffs' claim for interstate travel in aid of racketeering cannot be plausible on its face. Therefore, the Court finds that Plaintiffs fail to establish the predicate act of interstate travel in aid of racketeering.

11

The Court pauses here to note that *even if* Plaintiffs had properly pled a Travel Act violation, this violation alone would not be enough to maintain Plaintiffs' overall RICO claim. In addition to the required conduct, a plaintiff must establish a *pattern* of racketeering activity. *See Heinrich*, 668 F.3d at 404. To establish this pattern, "a plaintiff must allege at least *two predicate acts* of racketeering activity occurring within a ten-year period and show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." *Huff*, 2013 U.S. Dist. LEXIS 133574 at *43 (internal citations omitted) (emphasis added). Here, without the predicate acts of mail or wire fraud, previously dismissed for improper pleading, had Plaintiffs' § 1952 violation been properly pled, it still would have been only one of two required predicate acts, thereby eliminating Plaintiffs' RICO claim.

In sum, given the insufficiency of the pleadings or, in the alternative, Plaintiffs' failure to properly allege two predicate acts establishing a pattern of racketeering activity, this Court grants Defendants' Motion to Dismiss as to Count I.

### 2. Count II

Defendants also maintain that Plaintiffs have failed to allege a RICO *conspiracy* under federal law (Docket No. 22, pp. 3-4 of 8). "To plausibly state a claim for a violation of 18 U.S.C. § 1962(d), plaintiffs must successfully allege *all the elements* of a RICO violation, as well as . . . the existence of an illicit agreement to violate the substantive RICO provisions." *Heinrich*, 668 F.3d at 411 (*quoting United States v. Sinito*, 723 F.2d 1250, 1260 (6th Cir. 1983) (emphasis added)). "An agreement can be shown if the defendant objectively manifested an agreement to participate directly or indirectly in the affairs of an enterprise through the commission of two or more predicate crimes." *Id*. (*quoting Sinito*, 723 F.2d at 1261).

12

Here, Plaintiffs have failed to adequately allege an underlying RICO violation. As such, they cannot now properly maintain a claim for conspiracy under 18 U.S.C. § 1962(d). Therefore, Defendants' Motion to Dismiss is granted with respect to Count II of the Amended Complaint.

**B.      Remaining State Law Claims**

The balance of Plaintiffs' claims concern state law issues, namely state RICO violations, misappropriation of trade secrets under the Ohio Uniform Trade Secrets Act, conversion, conspiracy, unfair competition, unjust enrichment, and failure to compensate (Docket No. 15). It is well established in the Sixth Circuit that "Congress has authorized a district court to decline supplemental jurisdiction when that court has *already dismissed* all claims over which it had original jurisdiction . . . and the court has broad discretion to do so." *City of Cleveland v. Woodhill Supply, Inc.*, 403 F.Supp.2d 631, 637 (N.D. Ohio 2005) (emphasis added); *see also* 28 U.S.C. § 1367(c)(3) (stating that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction").

Here, Plaintiffs' state law claims were only before this Court because of the original jurisdiction afforded to Plaintiffs' federal RICO claims, which have now been dismissed. In its discretion, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims against Defendants.

**VII. CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is granted with respect to Counts I and II. The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. **SO ORDERED**.


/s/Vernelis K. Armstrong
United States Magistrate Judge


Date:   January 30, 2014